McBRIDE, Judge.
Plaintiff, Percy Rogers, was injured on May 9, 1946, at about 2:30 o’clock, p. m;, while working as a laborer for W. L. Riche-, son & Sons, Inc., freight forwarders. At the time of the accident, he was engaged in pushing a hand' truck in an up-river direction along the extreme inboard portion of the apron of the Orange Street wharf in New Orleans. Defendant S. A. Matranga, acting within the scope and course of his employment by defendant Illinois Central Railroad Company, was driving his automobile down-river on the apron of said wharf, when his automobile and the hand truck being pushed by Rogers collided.
W. L. Richeson & Sons, Inc., claims to have expended a total of $329.83 in workman’s compensation payments to Rogers, and in medical and hospital expenses for the treatment of the injuries received by Rogers, and joins in this suit as a party plaintiff in its status as legal subrogee for the amount paid by it to Rogers in compensation, and the amount paid by it for medical and hospital expenses.
Percy Rogers and his employer claims damages in the total amount of $6507.25 from the defendants, who are S.. A. Ma-tranga, the Illinois Central Railroad Company, Matranga’s employer, and the Maryland Casualty Company, liability insurance carrier of said railroad, the petition alleging that Matranga was guilty of various acts of negligence which were the cause of the accident. The defendants, disavowing negligence on Matranga’s part, deny liability, and in the alternative plead that the accident was caused by the contributory negligence of Rogers, in that he deliberately or accidentally pushed his hand truck into the rear portion of Matranga’s automobile while the said automobile was stopped.
The appeal before us, which involves only questions of fact, was taken by Rogers from a judgment dismissing his suit, after a trial in the court below.
*694 At the time of the accident, Rogers was engaged in loading cases of whiskey and rum into a box car. The paved apron on the land side of the wharf shed is thirty feet wide, measured from the end of the “curtain” of the shed, and the railroad tracks of the Public Belt Railroad parallel this apron; between a parked box car and the apron is a space of about eighteen inches, and entrance is made to the side door of the box car from the apron across what the witnesses term a “stage,” which runs from the apron to the door of the car. Laborers leaving the shed with freight, push hand trucks across the apron into parked box cars for loading and unloading, and the apron is also used by vehicular traffic traversing the river front.
Near the point where the accident happened was a large pile of lumber, stacked lengthwise alongside the wall of the wharf shed, and this lumber extended out about half the width of the apron, which left about fifteen feet clearance for the passage of vehicular traffic travelling on the apron.
Guy Green, a coworker of Rogers, was produced as a plaintiff witness. The burden of his testimony, and that of Rogers, the plaintiff, is that the box car which Rogers was loading was adjacent to Sections 41 or 42 of the shed, and that the freight being loaded was located in Sections 33 or 34, a short distance upstream. Plaintiff would load his hand truck in Sections 33 or 34, and then come down under the shed to Section 41, and then, from the door of that section, would push the truck across the apron into the freight car. In returning from the box car to the freight, he would traverse the same route with his empty hand truck. Rogers had delivered a load of freight to the car, and after unloading it, made his exit from the car; however, instead of entering Section 41, he turned to his right and proceeded along the outer edge of the apron in an uptown direction, and at the same time Matranga’s automobile was coming downstream at a speed of about twenty to twenty-five miles an hour, on Matranga’s own right-hand side of the apron. Green and Rogers say that at the time a large automotive trailer-truck, which had come from the direction of downtown, was endeavoring to turn into and enter Section 41, and that Matranga pulled over from his right-hand side to his left-hand side of the apron, in a maneuver to pass behind this truck, and then cut sharply towards his right, causing the left rear fender of the automobile to sideswipe Rogers’ hand truck. They say that the automobile travelled for about twenty or twenty-five feet after the accident, and that Rogers’ truck was hit at a point about thirty feet from the door of the box car. Neither of these witnesses saw a car approaching from the opposite direction.
Matranga and his witness, Garland, made no mention of the trailer-truck endeavoring to enter Section 41. Matranga’s testimony is that -he had parked his car on the apron, about one hundred feet upstream from the place of the accident, while he checked box car numbers and initials for his employer. After doing so, he got into his car and started off in a downstream direction, at a speed which he estimated to be about five miles an hour. He noticed two cars coming from the opposite direction, and as the pile of lumber blocked his path, he decided to pull over to his left and come to a stop, in order to facilitate the two cars coming from the opposite direction passing him, and that just as he was coming to a stop, at a point a few feet from the outer edge of the apron, Rogers came out of the box car, started to-cross the apron to go into the shed, and then suddenly changed his mind and made a right turn with his hand truck to go upstream-along the edge of the apron. Matranga was positive that just as he stopped, Rogers passed by the window on the left side of his automobile, and he then heard a noise,, opened the door and got out of his car, and' found that Rogers’ hand truck had collided with the left rear portion of his automobile, and he found Rogers lying on the apron.
Plaintiff’s counsel attach much importance to a statement made by Matranga, to-the effect that he was “kind of confused at the time, to tell you the truth,” and argue that the confusion existing in Matranga’s-mind caused him to make the reckless maneuver with the automobile, as described by-Rogers and Green. We believe, however,. *695 that the import for which counsel contend should not be placed on Matranga’s statement, and we believe that Matranga satisfactorily explained the nature of his confusion. He stated that if he had kept on a straight path, he would have run into the lumber, and that he thought the best thing to do was to pull over to his left side and stop, and let the on-coming cars pass between his automobile and the lumber.
Ed. J. Garland, General Manager of the New Orleans Public Belt Railroad, appeared as a defense witness, and the trial judge was impressed by his statements. Garland substantially corroborates Ma-tranga. He was driving on the apron in an upstream direction, and when he reached the lumber there was another automobile (Ma-tranga’s) coming from the opposite direction, and Garland stopped to let the other car clear. He states that Matranga also slowed down and was almost stopped, and that he saw a colored man come out of the box car with a hand truck, turn sharply to his right, and start up the apron, and it appeared to Garland that the man with the •hand truck hooked the truck into the rear fender on the left side of Matranga’s automobile. Garland, however, stated that he did not see Rogers fall.
The trial judge gave these brief reasons for judgment: “Plaintiff has the burden of making his case reasonably certain. This court cannot disregard the testimony of the General Manager of the Public Belt. His testimony was in favpr of defendants; Judgment dismissing plaintiffs’ demands.”
A careful study of the record reflects that there are some minor inconsistencies in the testimony, but an analysis of all of the evidence convinces us that the testimony of Matranga and Garland should prevail, as their testimony appears to be more plausible than that of Rogers and his witness, Green.
As the judgment appealed from is based solely and only upon facts, it should not be disturbed, unless clearly erroneous, and we believe that the findings of the trial judge, who heard and saw the witnesses testify, are correct, and nothing appears in the record which would indicate there is reversible error.
The judgment appealed from will be affirmed.
Affirmed.